UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                    Plaintiff,                       Case No. 5:25-CR-0493 (GTS)

     v.

QUONTA ALBERT,

                    Defendant.

_____

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

DATED:      March 16, 2026                Respectfully submitted,
              Syracuse, New York

                                   ERIC K. SCHILLINGER
                                   Federal Public Defender

                        By:     Randi J. Bianco
                                   Assistant Federal Public Defender
                                   Office of the Federal Public Defender
                                   4 Clinton Square, 3rd Floor
                                   Syracuse, New York 13202
                                   (315) 701-0080

1

**PRELIMINARY STATEMENT**

Quonta Albert submits this memorandum in support of his pretrial motion to suppress physical evidence obtained from the warrantless search of his vehicle in violation of his Fourth Amendment rights.

**BACKGROUND**

On December 10th, 2025, in Pulaski, New York, Trooper Jonathan Cruz of the New York State Police ("N.Y.S.P.") Department conducted a traffic stop of Mr. Quonta Albert's vehicle as instructed by Trooper David Heath. Exhibit A, p.4. Trooper Heath was assisting a disabled vehicle on the side of Interstate 81 when he observed a Lexus with a tinted windshield and windows pass by. *Id.* Trooper Heath informed Trooper Cruz, located further down the road in the northbound direction, to initiate a stop on the Lexus. *Id.* As Trooper Cruz approached the car, Mr. Albert – the "operator and sole occupant" of the vehicle – informed the Trooper that he "was driving slow because [his] car was slipping" on the wet roadway due to having bad tires. *Id.*; Exhibit B. Trooper Cruz noticed the two front tires had "little to no tread" and "detected the odor of burnt cannabis emanating from the vehicle." Exhibit A, p.4; Exhibit B, 01:42 – 01:53. Mr. Albert handed over his driver's license and vehicle registration to Trooper Cruz, who then got back inside his own vehicle to run them through law enforcement databases. Exhibit B, 01:54 – 02:00, 03:06 – 07:15. Trooper Cruz then returned to Mr. Albert's vehicle, checking each of the tires. *Id.* at 07:38 – 08:17. He briefly asked Mr. Albert where he was going, and then, without further interaction, got back inside his own vehicle once more. *Id.*

Trooper Heath arrived shortly thereafter and was advised of the odor by Trooper Cruz. Exhibit A, p.4. What else Trooper Cruz informed Trooper Heath of is unknown because he switched off the audio on his body worn camera ("BWC") during this interaction. Exhibit B, 09:14

– 10:19. Trooper Heath then approached Mr. Albert's vehicle on the passenger's side door, at which point he also "detected the odor of burnt cannabis emanating from inside the vehicle." Exhibit A, p.4; Exhibit C, 00:38 – 00:44. Mr. Albert was fully cooperative with Trooper Heath, answering all his questions. Exhibit C, 00:45 – 02:00. Mr. Albert told Trooper Heath he was going to Tinker Tavern to visit his "Muslim brother" who he has known for "a couple years," stating he didn't know the exact address but knows how to get there because he has been there before. *Id.* Upon being questioned about the odor, Mr. Albert truthfully told Trooper Heath that his friend had been smoking marijuana in the front passenger seat about an hour before the stop. Exhibit A, p.5; Exhibit C, 02:00 – 02:39. However, Mr. Albert made clear that *he* had not smoked before driving, nor does he ever smoke marijuana at all. Exhibit A, p.5; Exhibit C, 02:00 – 02:39. Based only on the "odor of burnt cannabis" and the observation that Mr. Albert had "bloodshot watery eyes," Trooper Heath instructed Mr. Albert to exit the vehicle to perform a Standardized Field Sobriety Test ("SFST"). Exhibit A, p.4-5; Exhibit C, 02:43 – 03:39. Mr. Albert exited his vehicle with his car keys in hand, closing the door and locking car behind him. Exhibit B 13:42 – 13:53.

Upon getting out of the vehicle, Mr. Albert was frisked by Trooper Heath for weapons and drugs. *Id.* at 13:59 – 14:31; Exhibit C, 04:08 – 04:32. Mr. Albert again was cooperative, turning his pockets inside out, which revealed only an amount of cash. Exhibit B, 04:08 – 04:32. Trooper Heath detected no contraband on Mr. Albert's person. *Id.* He then ordered Mr. Albert to hand over his car keys and cell phone. Exhibit C, 04:43 – 05:00. Mr. Albert protested, seeing no reason for his personal property to be taken from him. *Id.* Nonetheless, Mr. Albert complied and gave Trooper Heath his keys and phone. *Id.*

Trooper Cruz then commenced the SFST. Exhibit B, 15:08 – 15:20. Just as the SFST was beginning, Trooper Heath walked around to the driver's side of Mr. Albert's vehicle, used the car

3

keys to unlock the vehicle, and opened the door. *Id.* at 15:08 – 15:20; Exhibit C, 05:13 – 05:35. Mr. Albert saw Trooper Heath do this and stopped the SFST to inquire, saying, "Excuse me. excuse me, excuse me, excuse me. Why are you searching my car? I'm doing a sobriety test." Exhibit B, 15:20 – 15:28. Trooper Heath then closed the door and walked back over to Mr. Albert. Exhibit C, 05:43 – 05:49. Trooper Heath told Mr. Albert that "part of the law is that [they] search [Mr. Albert's] immediate grabbable area … for cannabis." *Id.* When Mr. Albert continued to protest, the Troopers threatened to put him in handcuffs and detain him. *Id.* at 05:49 – 05:59, 06:41 – 06:44. Trooper Heath refused to return Mr. Albert's phone to him when he requested to make a phone call. *Id.* at 05:15 – 05:27. Trooper Heath told Mr. Albert they were "doing an investigation … to make sure that [he is] not impaired." *Id.* He stated, "It's not a search. It's your immediate grabbable area to make sure you're not impaired." *Id.* at 06:52 – 06:55. Trooper Cruz then explained that the 'immediate grabbable area' is "anywhere in the driver's seat and where you can reach in the car." *Id.* at 07:07 – 07:09. Mr. Albert requested to watch the search, which Trooper Heath denied. *Id.* at 07:46 – 08:06. Mr. Albert continued to protest. *Id.* at 06:27 – 09:03. When Trooper Cruz asked Mr. Albert why he was getting upset, Mr. Albert explained, "I feel like I'm being violated." *Id.* at 07:46 – 08:06.

Trooper Cruz escorted Mr. Albert away from the vehicle to continue the SFST. Exhibit B, 18:53 – 20:25. While Mr. Albert was performing the SFST, Trooper Heath retrieved a pair of latex gloves from the trunk of his police car and put them on as he walked back to Mr. Albert's vehicle. Exhibit C, 09:12 – 09:47. As Mr. Albert continued to perform the SFST, Trooper Heath opened the driver's side door of the vehicle once again. *Id.* at 09:52 – 09:54. Then, he began to search. *Id.* at 09:54 – 10:43. After looking under the driver's seat, Trooper Heath placed both hands and one leg on the seat, putting almost his entire body inside the car. *Id.* at 09:54 – 10:08. He then opened the

4

center console, taking items out and digging through the contents. *Id.* at 10:07 – 10:33. Within the center console, Trooper Heath located a "loaded .45mm AMT semiautomatic handgun" and a "zip bag containing a white chunk substance consistent with cocaine." *Id.* at 09:54 – 10:39; Exhibit A, p.5.

Based on these findings, Mr. Albert was then placed under arrest.[1] Exhibit A, p.5. Upon searching Mr. Albert's person incident to arrest, Trooper Heath discovered "a small corner tied clear plastic baggie which contained a white chunk like substance" in the front pocket of his pants. *Id.* Trooper Heath also searched the remainder of the vehicle, finding "a clear plastic baggie containing numerous rounds of .45mm ammunition [and] … a small corner tied plastic baggie containing a white substance consistent with cocaine" located in the center console; "a rectangular block wrapped in layers of plastic and packaging tape labeled '[HACK]' … consistent with a kilogram (kilo) containing narcotics" and "numerous clear knotted plastic baggies containing a white substance consistent with cocaine" located in a bag on the rear passenger floor; "a box of clear sandwich baggies along with a black operable digital scale"; and three Apple iPhones. *Id.*

Mr. Albert was then transported to the N.Y.S.P. station for processing. *Id.* Shortly after arriving, Trooper Cruz finished administering the SFST to Mr. Albert. *Id.* "Based on Q. Albert's performance during the tests at the station, it was determined that he was not impaired." *Id.* Senior Investigator Anthony Halsey conducted tests on the substances found in the vehicle. *Id.* The "white chunk like substances, as well as the white powder like substances inside the black brick like

---

[1] Mr. Albert attempted to flee when he was initially placed under arrest. Exhibit B, 20:50 – 22:42. Both Troopers gave chase. *Id.* Trooper Cruz deployed his Division issued taser, hitting Mr. Albert, and Trooper Heath delivered multiple closed fists strikes upon Mr. Albert. Exhibit A, p.5. He was ultimately apprehended just outside the wooded area adjacent to the highway. *Id.*

package" tested positive for cocaine. *Id.* The "white residual power on the black operable digital scale" was also confirmed to be cocaine. *Id.*

Mr. Albert was subsequently charged with various narcotics and weapons-related offenses, as well as resisting arrest. *Id.* On February 5th, 2026, a grand jury indicted Mr. Albert on two counts of distribution and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). Because the weapon and drugs located in Mr. Albert's vehicle were discovered pursuant to a warrantless search in the absence of probable cause, the evidence must be suppressed.

**ARGUMENT**

I.    **THE MOTION TO SUPPRESS EVIDENCE FOUND IN MR. ALBERT'S VEHICLE MUST BE GRANTED BECAUSE IT WAS COLLECTED PURSUANT TO AN UNLAWFUL SEARCH IN VIOLATION OF HIS FOURTH AMENDMENT RIGHTS.**

The Fourth Amendment prohibits "unreasonable searches" by the government. U.S. CONST. amend. IV. A search occurs when the government violates a person's "reasonable expectation of privacy." *United States v. Poller*, 129 F.4th 169, 174 (2d Cir. 2025) (quoting *United States v. Weaver*, 9 F.4th 129, 141 (2d Cir. 2021)). A person has such a reasonable expectation of privacy if "'the individual manifested a subjective expectation of privacy in the object of the challenged search,' and 'society [is] willing to recognize that expectation as reasonable.'" *Id.* (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)). It is well-established law that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *United States v. Paulino*, 850 F.2d 93, 97 (2d Cir. 1988) (quoting *Katz*

*v. United States*, 389 U.S. 347, 356 (1967)). "To 'safeguard Fourth Amendment rights generally,' … the Supreme Court has crafted the exclusionary rule, requiring the exclusion of evidence '[w]hen the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights[.]'" *United States v. Estrella*, No. 19-CR-276-10, 2021 U.S. Dist. LEXIS 22127, *19 (D. Conn., Feb. 5, 2021) (quoting *United States v. Stokes*, 733 F.3d 438, 443 (2d Cir. 2013) (internal citations omitted)).

Here, as will be discussed below in further detail, Mr. Albert was subject to an unreasonable, warrantless search of his vehicle. Thus, Mr. Albert's Fourth Amendment right against unreasonable searches by the government has been violated and the evidence collected pursuant to that search must be suppressed.

### A. A Fourth Amendment "search" occurred when Trooper Heath opened and inspected the interior of Mr. Albert's vehicle.

As noted above, a "search" occurs when the government invades an area in which "the individual manifested a subjective expectation of privacy, and society [is] willing to recognize that expectation as reasonable." *Poller*, 129 F.4th at 174 (internal citations omitted). Thus, in order to prove that the search was unreasonable in violation of Mr. Abert's constitutional rights, he first must demonstrate that he had both a reasonable and objective expectation of privacy in the interior of his vehicle such that the intrusion constituted a "search" under the Fourth Amendment. Mr. Albert had both.

### 1. Subjective Prong

As for the subjective prong, "the person challenging the search must demonstrate a subjective desire to keep his or her effects private." *Paulino*, 850 F.2d at 97. Mr. Albert did just that. First, upon getting out of the vehicle when told to do so by the Troopers, Mr. Albert closed

7

the car door behind him, locked the vehicle, and took his car keys with him.  Exhibit B, 13:46 –
13:52, 04:38 – 04:57. This demonstrated his intent to keep his vehicle private because it prevented
anyone from intruding into his car while he was not inside. In fact, Trooper Heath had to use the
car keys he took from Mr. Albert in order to gain access to the car's interior. More obviously, Mr.
Albert overtly protested the search, which demonstrated his desire that his vehicle remain private.
Exhibit B, 15:20 – 18:52, 20:24 – 20:45. He even said to the Troopers, "I feel like I'm being
violated." *Id.* at 17:52 – 17:56.

Mr. Albert further demonstrated an actual expectation of privacy in his vehicle by tinting
the windows of the car. In fact, the traffic stop was initiated due to the window tint of the vehicle.
*See* Exhibit A, p.4 ("As the vehicle passed me, I observed the front windshield to be non-
transparent (tinted), as well as the front and rear side windows to be non-transparent. … I apprised
Trooper Jonathan Cruz (SP Pulaski Interstate Patrol) to conduct a traffic stop on the Lexus.").
While the Second Circuit previously held in *United States v. Poller* that window tint on a car does
not reflect an expectation of privacy (129 F.4th at 174-76), there are distinct factual differences
that make this case separable. In *Poller*, by placing an iPhone close to the vehicle's tinted windows,
officers were able to view the interior of the defendant's car through the iPhone's camera
application. *Id.* at 173. This revealed the presence of multiple firearms in the visible part of the
car's interior and a bag containing an unknown substance which appeared to be drugs. *Id.* In
holding that the defendant had no expectation of privacy in the vehicle, the court explained that "a
mere visual observation does not constitute a search," (*Id.* at 174 (quoting *United States v. Jones*,
565 U.S. 400, 412 (2012))), because "[w]hat a person knowingly exposes to the public, even in his
own home or office, is not a subject of Fourth Amendment protection." *Id.* (quoting *Katz*, 389 U.S.
at 351). "Thus, an object 'ordinarily in plain view of someone outside [an] automobile' is not

'subject to a reasonable expectation of privacy.'" *Id.* The court noted "[t]hat proposition holds true even when the interior is not entirely visible to the naked eye and requires an officer to, for example, 'shin[e] a flashlight to illuminate the inside of the vehicle.'" *Id.* at 175 (quoting *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000)).

However, "what a person, even in a public place, tries to keep private may be entitled to [Fourth Amendment] protection." *Paulino*, 850 F.2d at 96. Here, Mr. Albert clearly intended to keep the items in his car private, despite driving the vehicle on public roadways. The window tint prevented anyone – police officers or the common passerby – from viewing the interior of his car with the naked eye. The Troopers did not use any technology to see through the tinted windows and glimpse the interior of the car. Without doing so, the window tint kept the contents of Mr. Albert's vehicle unknown to the Troopers. Even if the Troopers had viewed the interior of Mr. Albert's car through the tinted windows, they would not have found the items at issue, as they were not in plain view. Instead, Trooper Heath was required to open the vehicle, enter it, and rummage through the center console in order to find the contraband. Exhibit C, 09:53 – 10:42. This situation is more like *Paulino*, in which the Second Circuit found the defendant "clearly evidenc[ed] his desire to keep the items private" by keeping counterfeit bills hidden under a rubber mat in the vehicle, therefore demonstrating a subjective expectation of privacy. 850 F.2d at 97.

Because Mr. Albert made efforts to keep his effects private, including the window tint, locking the vehicle, protesting the search, and concealing the contraband in the center console, he demonstrated an actual expectation of privacy.

2. <u>Objective Prong</u>

9

This expectation of privacy demonstrated by Mr. Albert is also one that society is prepared to recognize as reasonable, satisfying the objective prong. The Supreme Court has acknowledged that, "[w]hile the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." *New York v. Class*, 475 U.S. 106, 114-15 (1986).

The Supreme Court explained the justification for the diminished privacy expectation in one's vehicle in *New York v. Class*. In holding that the defendant had no reasonable expectation of privacy in the VIN, the Court noted that "[t]he factors that generally diminish the reasonable expectation of privacy in automobiles are applicable *a fortiori* to the VIN." *Class*, 475 U.S. at 113. These factors include the fact that a car "travels public thoroughfares where both its occupants and its contents are in plain view" and is "subject to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements." *Id.* Applying these factors to the VIN, the Court found that a motorist's reasonable expectation of privacy is diminished "because of the important role played by the VIN in the pervasive governmental regulation of the automobile and the efforts by the Federal Government to ensure that the VIN is placed in plain view." *Id.* at 114. Here, however, these factors are not applicable. The contraband found in Mr. Albert's center console was not in plain view, nor does the center console play a role in the "pervasive regulation by the government of automobiles." *Id.* at 113. A driver does not expect that any regulation will on occasion require the State to open and search the contents of his center console. *See id.* ("A motorist must surely expect that such regulation will on occasion require the State to determine the VIN of his or her vehicle").

District courts in this circuit have also recognized the reasonable expectation of privacy that one has in the interior of his vehicle. For example, in *United States v. Estrella*, the court held that a Fourth Amendment "search" was conducted when a police officer sat inside the defendant's vehicle and opened the center console. 2021 U.S. Dist. LEXIS 22127, at *38-41; *see also United States v. Miller*, 382 F. Supp. 2d 350, 378 (N.D.N.Y. 2005) ("It is clear, however, that owners and drivers of vehicles have an expectation of privacy in the vehicles interior."). The conduct that amounted to a Fourth Amendment "search" in *Estrella* is identical to what happened here: Trooper Heath was inside the vehicle and opened the center console.

Therefore, Mr. Albert had a subjective, objectively reasonable expectation of privacy in the interior of his car. As a result, the government's intrusion into those areas constituted a "search" under the Fourth Amendment.

**B. The search of Mr. Albert's vehicle was unreasonable because it was conducted in the absence of a warrant and did not fall within a recognized exception to the warrant requirement.**

Because a search within the meaning of the Fourth Amendment occurred when the police opened and entered Mr. Albert's vehicle, the Fourth Amendment's prohibition against unreasonable searches is applicable. As previously stated, "searches conducted … without prior approval by judge or magistrate[] are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Paulino*, 850 F.2d at 95 (internal citations omitted). It cannot be disputed that the search of Mr. Albert's car was conducted without a warrant issued by a judge or magistrate. Therefore, the burden shifts to the government to show that the search fell within one of the exceptions to the warrant requirement. *See McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir. 1997).

1. The Automobile Exception

The government will likely contend that the search was justified under an exception to the Fourth Amendment warrant requirement, namely the 'automobile exception.' Under the automobile exception, police are permitted to "conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004) (citing *Pennsylvania v. Labron*, 518 U.S. 940 (1996); *Carroll v. United States*, 267 U.S. 132 (1925); *California v. Acevedo*, 500 U.S. 565 (1991)). The search authorized is limited to locations that may contain the evidence or contraband the police have probable cause to seek, but may include the entire vehicle and its contents, including containers and packages. *Miller*, 382 F. Supp. 2d at 378 (citing *United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004)). Mr. Albert concedes that the vehicle was mobile. Thus, the only question presented is whether there was probable cause to believe the vehicle contained evidence of a crime.

The Troopers here will purport that the warrantless search of Mr. Albert's car was reasonable because they had probable cause to believe it contained evidence that he was committing the offense of driving while under the influence of drugs, in violation of New York Vehicle and Traffic Law ("N.Y.V.T.L.") § 1192(4). The Troopers' only basis in thinking this, however, was "the odor of burnt cannabis emanating from inside the vehicle" and Mr. Albert's "bloodshot watery eyes." Exhibit A, p.4. This does not amount to probable cause. Despite the lack of probable cause, the government will likely contend that the search was justified as a search of "readily accessible" areas pursuant to New York law, which states:

> When a law enforcement officer is investigating whether a person is operating a motor vehicle, vessel or snowmobile while impaired by drugs … in violation of subdivision four or subdivision four-a of section eleven hundred ninety-two of the vehicle and traffic law … the odor of burnt cannabis shall not provide probable cause to search any area of the vehicle that is not readily accessible to the driver and

reasonably likely to contain evidence relevant to the driver's condition.

N.Y. PENAL LAW § 222.05(4). However, the area searched in this case does not constitute a "readily accessible" area. Therefore, the Troopers conducted a warrantless search of areas outside the scope of New York Penal Law ("N.Y.P.L.") § 222.05(4) and without probable cause justifying an exception to the warrant requirement.

### i. *Probable Cause*

"[P]robable cause exists 'where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that' evidence of a crime will be found in the place to be searched." *Gaskin*, 364 F.3d at 456-57 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). Whether probable cause exists is analyzed with regard to the "totality of the circumstances." *Miller*, 382 F. Supp. 2d at 378.

In *United States v. Jones*, the police observed a vehicle drive through a traffic light while the front seat passenger smoked a marijuana cigarette. No. 1:25-cr-00369, 2025 U.S. Dist. LEXIS 257736, *2-3 (S.D.N.Y., Dec. 12, 2025). When police officers pulled up alongside the vehicle, the defendant looked away and the smoking passenger "ducked down, appearing as if to place something low in the [v]ehicle." *Id.* at *3. The vehicle then ran a second red light, after which the police commenced a traffic stop. *Id.* When the officers approached the car, the passenger admitted she was smoking marijuana and even held up a marijuana cigarette to show them. *Id.* at *3-5. During a subsequent search of the vehicle, which the defendant stated was borrowed, the officer observed a handbag in the front passenger side door. *Id.* at *6. Inside the officer discovered a gun, and the defendant and his passengers were arrested. *Id.* Although finding initially that the defendant did not have standing to challenge the search, the court went on to state, "[e]ven if

13

Defendant did have standing, the record clearly establishes that the search and seizure of the gun from the bag in the front passenger door was permissible under the automobile exception." *Id.* at *14. The court found that officers had probable cause to believe the vehicle contained evidence of a crime, specifically N.Y.V.T.L. § 1192(4), and explicitly stated in accordance with N.Y.P.L. § 222.05(4) that "probable cause was not based solely on the odor and possession of cannabis." *Id.* at *18. Rather, "[t]he relevant facts supporting probable cause include that the Officers witnessed: (1) Passenger 1 smoking marijuana while the Vehicle was on the public highways; (2) Defendant driving through two red lights, suggesting some degree of impairment on his behalf; and (3) Passenger 1 placing something low in the Vehicle after seeing the Officers pull up next to them." *Id.; see also United States v. Cuevas*, No. 15-CR-846 (PKC), 2016 U.S. Dist. LEXIS 63009 (S.D.N.Y., May 12, 2016) (holding police had probable cause to search the vehicle because they "observed a bag containing a substance that appeared to be marijuana inside the center console of the car").

Here, unlike in *Jones*, the traffic violation for which Mr. Albert was pulled over – tinted windows exceeding the legal level – does not suggest a degree of impairment. Nor did police witness anyone smoking in the car or acting furtively in their presence. Mr. Albert denied smoking anything himself. There were no drugs or drug paraphernalia visible to the Troopers until they searched the car. None of the additional facts giving rise to probable cause in *Jones* are present; the only similarity to *Jones* is that the officers here also smelled burnt cannabis emanating from the car. The smell of burnt cannabis alone, however, is not sufficient to establish probable cause to search a vehicle, as New York law explicitly provides. *See* N.Y. PENAL LAW § 222.05(4).

This case is instead more similar, indeed almost identical to *People v. Perryman*. 234 A.D.3d 1357 (4th Dept. 2025). In *Perryman*, like here, a State Trooper stopped the defendant's

vehicle for a traffic violation. *Id.* at 1357. Upon approaching the passenger's side window, the

Trooper "observed a plume of smoke and smelled burning cannabis." *Id.* Based on those

observations, the defendant was ordered out of the vehicle to complete a field sobriety test while

another Trooper "searched the vehicle and recovered a quantity of narcotics." *Id.* In holding that

the search of the vehicle was not justified by probable cause, the Fourth Department stated:

> At the time of the search, the Trooper had reasonable cause to believe only that defendant had *consumed* cannabis inside a vehicle in violation of Vehicle and Traffic Law § 1227, which is a simple traffic infraction that would not support the search of the vehicle. The Trooper had no basis for believing that defendant was operating a vehicle while *impaired* by such consumption in violation of Vehicle and Traffic Law § 1192 (4) or (4-a) so as to justify the search pursuant to Penal Law § 222.05 (4). The Trooper testified at the suppression hearing that defendant stopped the vehicle immediately and appropriately when directed to do so. He further testified that he did not believe that defendant seemed impaired. Defendant was given field sobriety tests, but the Trooper searched the vehicle before that testing was complete and, in any event, the testing showed that defendant was not impaired. We therefore conclude that Penal Law § 222.05 (3) prohibited the Trooper from relying solely on his detection of burning or burnt cannabis to give him reasonable cause to search the vehicle.

*Id.* at 1358 (internal citations omitted). Just as in *Perryman*, Mr. Albert was stopped for a

simple traffic infraction which would not ordinarily support a search. The smell of burnt cannabis

emanating from the vehicle – which, according to *Perryman*, only provides reasonable cause to

believe that the driver had *consumed* cannabis – was explained by Mr. Albert as the remnants of

his passenger who had smoked in the vehicle an hour prior. Mr. Albert vehemently denied smoking

himself. Even if this provided probable cause to believe that Mr. Albert had *consumed* cannabis,

the proper step would be to conduct a field sobriety test. However, like in *Perryman*, Mr. Albert

had not even started the SFST before Trooper Heath first attempted to search the car. And in fact,

when Mr. Albert later completed the SFST after the search had already been conducted, he showed

no signs of impairment.

ii.    *Readily Accessible Area*

The government makes much of the "readily accessible" language in N.Y.P.L. § 222.05(4). The police relied on that provision in searching "the immediate grabbable areas" of Mr. Albert's car. In the Investigative Report written by Trooper Heath, it states that he "opened the driver's side door to search the readily accessible area where Q. Albert was sitting pursuant to Article [222.05] subdivision 4 of the New York State Penal Law." Exhibit A, p.5. However, Trooper Heath then detailed how he searched the center console of the vehicle, where the evidence Mr. Albert seeks to suppress was located. *Id.* The center console goes beyond the areas which are "readily accessible to the driver and reasonably likely to contain evidence relevant to the driver's condition." N.Y. PENAL LAW § 222.05(4).

The court in *Jones*, discussed above, stated that "even if New York Penal Law § 222.05(4) applies such that the Officers had probable cause based on the smell of burnt marijuana to search only those areas 'readily accessible to the driver,' the search of the side passenger door, where the bag containing the gun was located, would be proper." 2025 U.S. Dist. LEXIS 257736, at *19. The court concluded that the front passenger door was an area that was 'readily accessible' to the driver and noted that the officers did not search the trunk, which "would have run afoul of the law." *Id.* at *19-20.

The center console at issue here is not like the front passenger side door in *Jones* for various reasons. First, the front passenger side door is openly accessible, whereas the center console requires various steps to gain access. Considering "[t]he center console [is] not known to open on its own, requiring a button to be pushed in order to open it," (*Estrella*, 2021 U.S. Dist. LEXIS 22127, at *39), Mr. Albert would have had to manipulate the opening mechanism and dig through the contents of the console to access the contraband, all while driving the vehicle. Instead, the

16

center console is more like the trunk of a car, in that it requires the defendant to take steps to gain access "because it is unlikely he, or anyone else, would drive with their center console that acts as an arm rest open." *Id.* at \*40. The place searched by Trooper Heath in the vehicle was not, therefore, a "*readily*" accessible area to the driver.

Additionally, Mr. Albert had no passengers. When operating a vehicle with other passengers, the "readily accessible area" increases because other individuals in the car are available to help the driver obtain things.

## CONCLUSION

Because the evidence was obtained during an unreasonable search of areas outside those which are "readily accessible" to the driver and in the absence of a warrant or probable cause, the search violated Mr. Albert's Fourth Amendment right against unreasonable government intrusions. Therefore, all evidence obtained from the illegal search must be suppressed.

DATED: March 16, 2026

Respectfully submitted,

ERIC K. SCHILLINGER
Federal Public Defender

By:   Randi J. Bianco
Assistant Federal Public Defender
Bar Roll No. 507514
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
(315) 701-0080

TO:   Nicolas Commandeur, AUSA (via ECF)
Quonta Albert (via mail)