UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.                                                                          5:25-CR-0493
                                                                              (GTS)
QUONTA ALBERT,

                                        Defendant.

_____

APPEARANCES:                                              OF COUNSEL:

OFFICE OF UNITED STATES ATTORNEY          NICOLAS COMMANDEUR, ESQ.
FOR THE NORTHERN DISTRICT OF NEW YORK     Assistant United States Attorney
    Counsel for the Government
100 South Clinton Street
Syracuse, NY 13261-7198


HON. ERIC K. SCHILLINGER                  RANDI J. BIANCO, ESQ.
Federal Public Defender for the N.D.N.Y.   Assistant Federal Public Defender
    Counsel for Defendant
4 Clinton Square, 3rd Floor
Syracuse, New York 13202

GLENN T. SUDDABY, United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this criminal proceeding against Quonta Albert

("Defendant"), is Defendant's motion to suppress physical evidence obtained as a result of the

warrantless search of his motor vehicle, pursuant to Fed. R. Crim. P. 12(b)(3)(C).   (Dkt. No. 31.)

For the reasons set forth below, Defendant's motion is denied.

## I.      RELEVANT BACKGROUND

### A.      Factual Background of Search

Shortly after 2:00 p.m. on December 10, 2025, New York State Police ("NYSP") Trooper

David Heath observed a Lexus sedan traveling north on Interstate 81 in the area of Pulaski, New

York.   (Dkt. No. 31, Attach. 3, at 2 [Ex. A to Bianco Decl., attaching NYSP Investigative Report].) [1]   At the time, Trooper Heath was stopped on the side of the road, assisting with a disabled vehicle.   (*Id*.; Dkt. No. 42, at 10 [Hrg. Tr.].)   Trooper Heath observed that the Lexus had tinted windows that appeared to violate New York law.   (Dkt. No. 31, Attach. 3, at 2 [Ex. A to Bianco Decl.]; Dkt. No. 42, at 6-7 [Hrg. Tr.].)   Trooper Heath checked the Lexus's registration, which confirmed that Defendant was the registered owner.   (Dkt. No. 42, at 7-8 [Hrg. Tr.].)   Trooper Heath was familiar with Defendant, insofar as he (Trooper Heath) had participated in an investigation earlier in the year into Defendant's drug trafficking activities. (*Id*. at 8.)   Specifically, Trooper Heath was aware that law enforcement had conducted controlled purchases of drugs from Defendant.   (*Id*.)   Trooper Heath had personally provided support for one of those controlled buys, which took place in May 2025.   (*Id*. at 8-10.)

Trooper Heath contacted his supervisor, Senior Investigator Anthony Halsey, to determine whether the traffic stop of Defendant's vehicle would undermine the drug investigation.   (*Id*. at 11.)   Senior Investigator Halsey indicated that Trooper Heath could proceed with the traffic stop.   (*Id*. at 11-12.)   But Senior Investigator Halsey, who was also familiar with the drug investigation, reminded Trooper Heath to be careful because Defendant was likely to be armed.   (*Id*. at 12.)   Trooper Heath contacted Trooper Jonathan Cruz, who was then north of Trooper Heath on Interstate 81.   (*Id*. at 11-12.)   Trooper Heath gave Trooper Cruz a description of the Lexus and requested that Trooper Cruz stop the vehicle for the suspected traffic violation.   (*Id*. at 11-12; Dkt. No. 31, Attach. 3, at 2 [Ex. A to Bianco Decl.].)

Trooper Cruz identified the Lexus and observed that it was driving slowly and appeared

---

[1]      Page citations in this Decision and Order refer to the screen numbers on the Court's Case Management / Electronic Case Filing ("CM/ECF") System, not to the page numbers stated on the documents contained therein.

to have illegal window tint.   (Dkt. No. 42, at 66 [Hrg. Tr.].)   Trooper Cruz stopped the Lexus and approached the driver's side window.   (*Id*.)   Defendant was the driver and sole occupant. (*Id*. at 66-67.)   Trooper Cruz smelled the odor of burnt marijuana coming from the car, and observed that Defendant's eyes were watery.   (*Id*. at 67.)   Defendant told Trooper Cruz that he was aware that he had been driving slowly, but said that he was doing so because "[his] car was slipping" on the wet roadway due to having bad tires.   (Dkt. No. 31, Attach. 4, at 01:44 – 01:54 [Cruz Body Cam, attaching video footage from Trooper Cruz's Body Worn Camera].)   Trooper Cruz noticed the two front tires had "little to no tread" and "detected the odor of burnt cannabis emanating from the vehicle."   (Dkt. No. 31, Attach. 3, at 4 [Ex. A to Bianco Decl.]; Dkt. No. 31, Attach. 4, at 01:47 – 01:51 [Cruz Body Cam]; Dkt. No. 42, at 66-68, 84 [Hrg. Tr.].)   Defendant handed over his driver's license and vehicle registration to Trooper Cruz, who then got back inside his own vehicle and ran them through law enforcement databases.   (Dkt. No. 31, Attach. 4, at 01:55 – 02:05, 03:06 – 07:30 [Cruz Body Cam].)   Trooper Cruz then returned to Defendant's vehicle, asked him where he was going, checked each of his tires, and then got back inside his own vehicle again.   (*Id*. at 07:30 – 08:09; Dkt. No. 42, 68, 70 [Hrg. Tr.].)

Less than a minute later, Trooper Heath arrived at the scene.   (Dkt. No. 31, Attach. 4, at 08:56 – 08:57; Dkt. No. 31, Attach. 5, at 00:00 – 00:30 [Heath Body Cam, attaching video footage from Trooper Heath's Body Worn Camera].)   Trooper Cruz advised Trooper Heath of the odor of marijuana.   (Dkt. No. 31, Attach. 3, at 2 [Ex. A to Bianco Decl.].)[2]   Troopers Heath and Cruz walked back to the Lexus, at which point Trooper Heath (from the passenger's side door) also "detected the odor of burnt cannabis emanating from inside the vehicle."   (Dkt. No. 31, Attach. 3, at 2 [Ex. A to Bianco Decl.]; Dkt. No. 31, Attach. 4, at 10:22 – 10:36 [Cruz Body

---

[2]     During this interaction, Trooper Cruz temporarily switched off the audio on his body

3

Cam]; Dkt. No. 31, Attach. 5, at 00:30 – 00:44 [Heath Body Cam]; Dkt. No. 42, at 18.)

Troopers Heath and Cruz continued to question Defendant.   (Dkt. No. 31, Attach. 4, at 10:36 – 13:40 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 00:45 – 02:15 [Heath Body Cam].)

When asked where he was going, Defendant stated that he was going to see his "Muslim brother."   (Dkt. No. 31, Attach. 5, at 00:45 – 00:53 [Heath Body Cam].)   Defendant identified the "Muslim brother" as "Usaim" and added that he did not know his last name.   (*Id*. at 00:53 – 01:48.)   Defendant said that he did not know the friend's address, but he knew how to get there. (*Id*.)   Defendant said that he had known the friend for a "couple of years."   (*Id*.)   Defendant confirmed that he (Defendant) lived in Syracuse.   (*Id*.)   Defendant said that his friend had a farm and they were going to slaughter animals.   (*Id*. at 01:48 – 02:00.)

When asked about the odor of burnt marijuana, Defendant acknowledged that "a friend" had been smoking in the front passenger seat about an hour earlier.   (*Id*. at 02:00 – 02:40.)   But Defendant denied personally consuming marijuana.   (*Id.*)   Trooper Heath instructed Defendant to exit the Lexus, because the Troopers would need to conduct a Standardized Field Sobriety Test to determine whether Defendant was safe to drive.   (*Id*. at 02:40 – 3:35.)   Defendant exited his vehicle with his car keys in hand, closing the door and locking the car behind him.   (*Id*. at 03:35 – 04:07; Dkt, No. 31, Attach. 6, at ¶ 5 [Ex. D to Bianco Decl., attaching Def.'s Decl..]; Dkt. No. 31, Attach. 4, at 13:47 – 13:59 [Cruz Body Cam].)

Upon getting out of the vehicle, Defendant was frisked by Trooper Heath for weapons and drugs.   (Dkt. No. 31, Attach. 4, at 13:59 – 14:31 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 04:08 – 04:32 [Heath Body Cam].)   Defendant turned his pockets inside out, which revealed only an amount of cash.   (Dkt. No. 31, Attach. 4, at 14:13 – 14:35 [Cruz Body Cam]; Dkt. No.

---

worn camera.   (Dkt. No. 31, Attach. 4, at 09:15 – 10:19 [Cruz Body Cam].)

31, Attach. 5, at 04:32 – 04:44 [Heath Body Cam].)   Trooper Heath detected no contraband on Defendant's person.   (*Id*.)   He directed Defendant to lock his phone, and to give it to him along with his keys.   (Dkt. No. 31, Attach. 4, at 14:35 – 14:54 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 04:45 – 05:02 [Heath Body Cam].)   Defendant protested that he should not have to do so for a field sobriety test, but eventually complied.   (*Id*.)

As Trooper Cruz began to perform the sobriety test on the side of the road, Trooper Heath walked toward the driver's door of the Lexus, where he used the car keys to unlock the vehicle and open the door.   (*Id*. at 05:26 – 05:35; Dkt. No. 31, Attach. 4, at 15:08 – 15:20 [Cruz Body Cam].)   When Defendant saw Trooper Heath do this, he stopped the sobriety test and said in a raised voice, "Excuse me. excuse me, excuse me, excuse me.   Why are you searching my car? I'm doing a sobriety test."   (Dkt. No. 31, Attach. 4, at 15:20 – 15:27 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 05:33 – 05:49 [Heath Body Cam].)   At the same time, Defendant began to walk away from Trooper Cruz, into traffic on the interstate toward Trooper Heath. (Dkt. No. 31, Attach. 4, at 15:20 – 15:32 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 05:33 – 05:49 [Heath Body Cam].)   Trooper Heath then closed the door and walked back over to Defendant, repeatedly directing Defendant to "get out of the road."   (Dkt. No. 31, Attach. 4, at 15:26 – 15:31 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 05:35 – 5:46 [Heath Body Cam].)

Trooper Heath told Defendant that "part of the law is that [they] search [Defendant's] immediate grabbable area . . . for cannabis."   (Dkt. No. 31, Attach. 4, at 15:36 – 15:40 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 05:45 – 05:48 [Heath Body Cam].)   Defendant said (again in a raised voice), "For cannabis?   Why are you searching my car for cannabis?"   (Dkt. No. 31, Attach. 4, at 15:40 – 15:50 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 05:48 – 05:52

[Heath Body Cam].)    When again informed that such a search was part of the penal law, Defendant said (again in a raised voice), "No, it's not.    I know the law.    No, it's not."    (Dkt. No. 31, Attach. 4, at 15:43 – 15:47 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 05:52 – 05:55 [Heath Body Cam].)    Trooper Heath told Defendant to "relax" and asked him if he needed to be put in handcuffs.    (Dkt. No. 31, Attach. 4, at 15:41 – 15:50 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 05:54 – 6:00 [Heath Body Cam].)

During the approximately three minutes that followed, Defendant repeatedly argued with the Troopers about the legality of such a search of his vehicle, continuing to raise his voice. (Dkt. No. 31, Attach. 4, at 15:48 – 18:52 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 06:00 – 09:02 [Heath Body Cam].)    When Defendant requested the return of his phone so that he could make a phone call, Trooper Heath denied the request, stating that he was doing an investigation to make sure Defendant was not impaired.    (Dkt. No. 31, Attach. 4, at 15:48 – 16:15 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 6:00-6:30 [Heath Body Cam].)    When Defendant requested to watch the search, Trooper Heath denied the request, stating, "That's not how this goes."    (Dkt. No. 31, Attach. 4, at 16:49 – 17:41 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 07:46 – 07:53 [Heath Body Cam].)    When Trooper Cruz asked Defendant why he was getting upset, Defendant explained, "I feel like I'm being violated."    (Dkt. No. 31, Attach. 4, at 17:45 – 17:57 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 07:54 – 08:06 [Heath Body Cam].)    When asked if he was upset because there were weapons in the car, Defendant said no.    (Dkt. No. 31, Attach. 4, at 18:18 – 18:24 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 08:30 – 08:36 [Heath Body Cam].)

Trooper Cruz escorted Defendant away from the vehicle and resumed the field sobriety test.    (Dkt. No. 31, Attach. 5, at 09:03 – 09:16 [Heath Body Cam]; Dkt. No. 31, Attach. 4, at

18:53 – 20:28 [Cruz Body Cam].)   As Trooper Cruz did so, Trooper Heath retrieved a pair of latex gloves from the trunk of his police car and put them on as he walked back to Defendant's vehicle.   (Dkt. No. 31, Attach. 5, at 09:22 – 09:55 [Heath Body Cam].)   Trooper Heath opened the driver's side door of the vehicle once again, then began to search.   (*Id*. at 09:52 – 09:55.) After checking under the driver's seat, Trooper Heath opened the center console, removed two items, then located a "loaded .45mm AMT semiautomatic handgun," along with "a large Hefty zip bag containing a white chunk [like] substance consistent with cocaine."   (*Id*. at 09:55 – 10:50; Dkt. No. 31, Attach. 3, at 3 [Ex. A].)   Trooper Heath then walked back to Defendant and said, "Turn around.   You are under arrest."   (Dkt. No. 31, Attach. 4, at 20:44 – 20:50 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 10:50 – 11:05 [Heath Body Cam].)

Defendant attempted to flee.   (Dkt. No. 31, Attach. 4, at 20:51 – 21:00 [Cruz Body Cam]; Dkt. No. 31, Attach. 5, at 11:01-11:16 [Heath Body Cam].)   Trooper Heath tackled him. (Dkt. No. 31, Attach. 4, at 20:52 – 21:00 [Cruz Body Cam].)   When directed to do so, Defendant refused to show his hands, and continued to resist Trooper Heath's attempts to handcuff him. (*Id*. at 21:05-22:35.)   Trooper Cruz deployed his taser and Trooper Heath eventually handcuffed Defendant and placed him under arrest.   (*Id*. at 21:10-22:51.)

Upon searching Defendant's person incident to arrest, Trooper Heath discovered "a small corner tied clear plastic baggie which contained a white chunk like substance" in the front pocket of his pants.   (*Id*.)   Trooper Heath searched the remainder of the vehicle.   (Dkt. No. 31, Attach. 3, at 3 [Ex. A to Bianco Decl.].)   He found the following: "a clear plastic baggie containing numerous rounds of .45mm ammunition [and] . . . a small corner tied plastic baggie containing a white substance consistent with cocaine" located in the center console; "a rectangular block

wrapped in layers of plastic and packaging tape labeled '[HACK]' . . . consistent with a kilogram (kilo) containing narcotics" and "numerous clear knotted plastic baggies containing a white substance consistent with cocaine" located in a bag on the rear passenger floor; "a box of clear sandwich baggies along with a black operable digital scale"; and three Apple iPhones.   (*Id.*)

Defendant was then transported to the NYSP station for processing.   (*Id.*)   Shortly after arriving, Trooper Cruz finished administering the field sobriety test to Defendant.   (*Id.*)   "Based on [Defendant's] performance during the tests at the station, it was determined that he was not impaired."   (*Id.*)   Senior Investigator Anthony Halsey conducted tests on the substances found in the vehicle.   (*Id.*)   The "white chunk like substances, as well as the white powder like substances inside the black brick like package" tested positive for cocaine.   (*Id.*)   The "white residual power on the black operable digital scale" was also confirmed to be cocaine.   (*Id.*)

Defendant was subsequently charged with various narcotics and weapons-related offenses, as well as resisting arrest; and he was issued traffic citations for illegal window tint and unsafe tires.   (*Id.*)

On December 18, 2025, a grand jury sitting in the Northern District of New York returned an indictment charging Defendant with one count of Distribution and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) & (b)(1)(C).   (Dkt. No. 1.)   That charge related to one of the controlled buys conducted as part of the NYSP investigation of Defendant.

On February 5, 2026, the grand jury returned a superseding indictment, adding a second count of Distribution and Possession with Intent to Distribute Controlled Substances, as well as one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18

U.S.C. § 924(c)(1)(A)(i) and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).   (Dkt. No. 19.)

### B.    Parties' Legal Arguments in Their Pre-Hearing Briefs

Generally, in his motion, Defendant asserts two arguments: (1) a "search" occurred under the Fourth Amendment when Trooper Heath opened and inspected the interior of Defendant's vehicle; and (2) the search of Defendant's vehicle was unreasonable, because it was conducted in the absence of a warrant and did not fall within a recognized exception to the warrant requirement, particularly the "automobile exception."   (Dkt. No. 31, Attach. 1, at 6-17.)   More specifically, in support of this second argument, Defendant argues as follows: (a) police are permitted to "conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime"; (b) here, although the Troopers will likely argue that probable cause existed for them to believe that the motor vehicle contained evidence that Defendant was committing the offense of driving while under the influence of drugs, their only bases for believing this – specifically, "the odor of burnt cannabis emanating from inside the vehicle" and Defendant's "bloodshot watery eyes" – do not amount to probable cause; and (c) nor was the automobile search permissible as a search of a "readily accessible" area pursuant to N.Y. Penal Law § 222.05(4), because the area searched – specifically, the center console of the vehicle – was not a "readily accessible" one.   (*Id*. at 11-17.)

Generally, in its opposition to Defendant's motion, the Government asserts three alternative arguments: (1) as a threshold matter, officers were entitled to "frisk" Defendant's vehicle for weapons, under *Terry v. Ohio*, 392 U.S. 1 (1968), and *Michigan v. Long*, 463 U.S.

1032 (1983), because they had reasonable suspicion that Defendant was armed and dangerous based on (a) Trooper Heath's awareness at the time of the stop that Defendant had a recent history of drug trafficking, (b) the suspicious and incomplete nature of Defendant's explanation of where he was going and why, (c) the illegal tint of the vehicle's windows, (d) Defendant's unusual act of locking his vehicle when he stepped out it to conduct the field sobriety test, and (e) information that Trooper Heath received from his supervisor officer just before the stop that Defendant was likely armed; (2) in any event, the search was justified under the automobile exception to the warrant requirement, because (a) there was probable cause to believe the vehicle contained evidence of drug possession and trafficking, and (b) there was probable cause to believe the vehicle contained evidence of Defendant's impaired driving; and (3) in any event, exclusion of evidence is inappropriate, because (a) courts will not suppress illegally obtained evidence when an officer acted in an "objectively reasonable" manner, and (b) here, the record reflects that the officers reasonably believed that the search they conducted was supported by NY Penal Law § 222.05(4).   (Dkt. No. 33, at 8-20.)

Generally, in reply to the Government's opposition, Defendant asserts four arguments: (1) the search of Defendant's vehicle was impermissible as a *Terry/Long* "frisk," because the facts relied on by the Government do not (alone or together) give rise to a reasonable suspicion to believe that he was armed and dangerous *at the time of the stop*; (2) the search was not justified under the automobile exception to the warrant requirement, because the officers lacked probable cause to believe that Defendant's vehicle contained evidence of a crime; (3) there was also no probable cause to believe the vehicle contained evidence of Defendant's impaired driving; and (4) suppression of the evidence obtained from the illegal search is the appropriate

10

remedy because, rather than being objectively reasonable, the Troopers' actions were a blatant disregard of Defendant's Fourth Amendment rights.    (Dkt. No. 34.)

C.      Evidentiary Hearing

On June 10, 2026, the Court held a nearly two-hour evidentiary hearing on the motion. (Text Minute Entry filed 06/10/2026; Dkt. No. 42 [Hrg. Tr.].)    During that hearing, the Court received into evidence two exhibits (specifically, the body cam footage of New York State Police Troopers David Heath and Jonathan Cruz), and heard testimony of three witnesses (specifically, New York State Police Troopers David Heath and Jonathan J. Cruz and New York State Police Senor Investigator Anthony Halsey), each of whom was cross-examined.    (Dkt. No. 43 [Gov't Exh. List]; Dkt. No. 42 [Hrg. Tr.].)    Following the hearing, the Court permitted the parties to submit supplemental briefs, which they did on July 1, 2026.    (Dkt. Nos. 43, 44.)

D.      Parties' Arguments in Their Post-Hearing Supplemental Briefs

Generally, in his post-hearing brief, Defendant asserts three arguments: (1) the facts do not demonstrate that officers believed Defendant was armed and dangerous such that a safety frisk of his car was justified, because (a) the information that Defendant was "armed" was undated hearsay that was from a detective who was not called as a witness and that was unsupported by any specifics, (b) the officers' non-protective tactics at the scene (e.g., not drawing their weapons when they approached Defendant's vehicle, asking Defendant to remain in the car and move it twice, not flinching when Defendant reached into his pocket for his ID, etc.) undermine any claimed safety concern, and (c) this case is distinguishable from the facts of *Michigan v. Long*, which involved a situation in which "Long was not frisked until the officers observed that there was a large knife in the interior of the car into which Long was about to

reenter"; (2) the search was not justified based on the theory that officers were investigating impaired operation by Defendant, because (a) the officers conducted the search before they completed the field sobriety test (and could obtain probable cause to believe he was impaired by marijuana), (b) there were no objective cues of impaired driving, (c) Trooper Heath's claim that he was searching for marijuana is belied by the fact that, before he searched, he went to his unmarked patrol vehicle and retrieved the latex gloves that he uses for firearms searches, and (d) even when officers investigate impaired driving, limits persist (i.e., those created by N.Y. Penal Law § 222.05[4]); and (3) the stop was unlawfully extended (specifically, from approximately 2:08 p.m., when Trooper Cruz could have issued tickets for bald tires and window tint, to approximately 2:17 p.m., when Trooper Heath arrived) and all evidence must be suppressed. (Dkt. No. 44.)

Generally, in its post-hearing brief, the Government asserts five arguments: (1) the officers were entitled to "frisk" Defendant's Lexus for weapons, because (a) Trooper Heath was aware at the time of the stop that Defendant had a recent history of drug dealing, (b) Defendant's story of what he was doing at the time of the stop was suspicious, (c) Defendant's windows were tinted, (d) Defendant took the unusual step of locking the Lexus when he stepped out to conduct the field sobriety test, (e) just before the stop, Trooper Heath received credible information from his supervisor that Defendant was likely armed (as well as being a gang member who had been tried for murder), and (f) the search of the car was limited and tied to the purpose of finding contraband and weapons; (2) the search was justified under the automobile exception to the warrant requirement, because (a) there was probable cause to believe the Lexus contained evidence of drug possession and trafficking, and (b) there was probable cause to believe the

Lexus contained evidence of Defendant's impaired driving; (3) exclusion of evidence is inappropriate, because the evidentiary hearing also confirmed that officers acted in good faith; (4) the Court should reject defense arguments raised for the first time after the hearing, because (a) Defendant waived any argument that the stop was prolonged more than necessary by failing to include it in his pre-hearing submissions even though he was aware of the relevant facts as well as the Government's assertion in its response that "Albert does not . . . assert that the traffic stop was unconstitutionally extended" (thus prejudicing the Government's ability to develop a record on the argument), and (b) at the hearing, the Court rejected Defendant's argument that he did not anticipate the hearing testimony purportedly evidencing that the stop was prolonged; and (5) in any event, the initial stop for illegal window tint was not unnecessarily prolonged, because (a) when he first engaged Defendant, Trooper Cruz was aware that Defendant had been driving unusually slowly before the stop, there was a strong odor of burnt marijuana coming from the vehicle (of which Defendant was the sole occupant), and Defendant's eyes appeared bloodshot and watery, (b) it was reasonable for Trooper Cruz to wait for Trooper Heath to arrive before conducting these next steps (both for officer safety and to conduct the search and sobriety test efficiently), (c) the officers became aware of the suspicious story Defendant had told Trooper Cruz, as well as the information that Trooper Heath had learned regarding Defendant's criminal history and the warning from a superior officer that Defendant was likely armed, and (d) the officers acted reasonably and expeditiously in completing their tasks and any delay was caused by Defendant's own obstructionist conduct in arguing with officers.   (Dkt. No. 45.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Standard Governing a Motion to Suppress

Generally, on a motion to suppress evidence, the defendant must identify with specificity the evidence that he believes should be suppressed, and to identify the specific bases for suppression. *See United States v. Elliott*, 363 F. Supp.2d 439, 444 (N.D.N.Y. 2005) (Sharpe, J.) ("The moving party must specifically articulate the relief requested and must set forth a factual basis which, if proven true, would entitle the moving party to the relief requested."); *accord, United States v. Burnett*, 793 F. Supp.2d 530, 531 (N.D.N.Y. 2011) (Sharpe, J.). Moreover, "[i]n order to raise a factual issue concerning the validity of a seizure such that a hearing is required, the defendant must support his claim with an affidavit based on personal knowledge." *United States v. Ruggiero*, 824 F. Supp. 379, 393-94 (S.D.N.Y. 1993), *aff'd sub nom. United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995) (quoting *United States v. Vasta*, 649 F.Supp. 974, 986 [S.D.N.Y.1986]); *see also United States v. Gillette*, 383 F.2d 843, 848 (2d Cir.1967) ("The affidavit submitted for appellant is insufficient in that it does not, for example, allege personal knowledge on the part of appellant's attorney; accordingly, there was no factual issue to be resolved and the denial of a hearing was correct.").[1] Having said that, "[a] hearing [on a motion to suppress] will be scheduled if the defendant and the government agree that one is necessary." *Burnett*, 793 F. Supp.2d at 532 (citing N.D.N.Y. L.R. Crim. P. 12.1[e]).

In considering a motion to suppress, "the court may rely on hearsay and other evidence,

---

[1]    *See, e.g., United States v. Jenkins*, 11-CR-0602, 2012 WL 12952811, at *3 (N.D.N.Y. Aug. 24, 2012) (Suddaby, J.) ("[I]n addition to the Local Rules of Criminal Practice for this Court, courts in the Northern District of New York have made it clear that motions to suppress require a supporting affidavit that is based on personal knowledge. Here, Defendant's motion does not meet this requirement because his attorney's affirmation does not contain facts, which if true, would result in suppression of the evidence obtained from Defendant's devices.") (internal citations omitted); *United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y.1989) ("[T]he defendant must show 'that disputed issues of material fact exist before an evidentiary hearing is required' . . . . The required showing must be made by an affidavit of someone with personal knowledge of the underlying facts.").

even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 United States 667, 679 (1980) (citing *United States v. Matlock*, 415 U.S. 164, 172-74 [1974]; *Brinegar v. United States*, 338 U.S. 160, 172-74 [1949]; Fed. R. Evid. 104[a], 1101[d][1]). Similarly, "the Confrontation Clause does not attach to pretrial suppression hearings." *United States v. Shaw*, 16-CR-0642, 2017 WL 1380598, at *7 (S.D.N.Y. Apr. 13, 2017). Finally, the standard of proof at such a hearing is a preponderance of the evidence. *See United States v. Miller*, 382 F. Supp.2d 350, 361 (N.D.N.Y. 2005) (Sharpe, J.) ("In Fourth and Fifth Amendment litigation … the standard of proof is … proof by a preponderance of the evidence.") (citing *United States v. Matlock*, 415 U.S. 164, 177 [1974]).

### B.    Relevant Legal Standards Governing Search of Vehicle

#### 1.    *Terry/Long* "Frisk" of Vehicle

"[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983) (internal quotation marks omitted). Officers may conduct such a sweep even if the defendant has been stopped only for a traffic violation, removed from the automobile, and briefly detained pursuant to a *Terry* stop. *Long*, 463 U.S. at 1050-52. This is because "a *Terry* suspect in [such a] position [might] break away from police control and retrieve a weapon from his automobile." *Id.* at 1051. "In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any

weapons inside."  *Id*. at 1051-52.

Reasonable suspicion must be "based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id*. at 1049 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 [1968]).   To determine whether reasonable suspicion exists, courts look at the "totality of the circumstances."  *Navarette v. California*, 572 U.S. 393, 395, 397 (2014); *see also United States v. Weaver*, 9 F.4th 129, 145-48, 150-51 (2d Cir. 2021) (en banc) (finding that a police officer had reasonable suspicion to believe that defendant was armed and dangerous during a *Terry* stop based on a "drawn-out" look defendant gave the police car as it passed, defendant's suspicious movements concentrated around his waist and pelvis, and his presence in a high-crime neighborhood).   These circumstances include the officer's personal observations, *Terry*, 392 U.S. at 6, 28, and information supplied by others, *Navarette*, 572 U.S. at 397-98.

Courts give substantial deference to the experience of officers in assessing reasonable suspicion, because "a trained officer draws inferences and makes deductions . . . that might well elude an untrained person."  *United States v. Corez*, 449 U.S. 411, 418 (1981).   Moreover, an officer's subjective intent in conducting the protective sweep for weapons is irrelevant, as long as there is reasonable suspicion that the driver is armed and dangerous.  *See Weaver*, 9 F.4th at 145-46 ("The Supreme Court has long rejected any attempt to inject subjectivity into the Fourth Amendment context.   The Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent of the officer.   Accordingly, the existence of a pretext for a *Terry* stop does not render invalid an otherwise

constitutional search.") (internal citations and quotations omitted).

### 2.    Automobile Exception

"Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). "[T]wo justifications for the vehicle exception" are (1) that "the vehicle is obviously readily mobile by the turn of an ignition key," and (2) that "there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling." *California v. Carney*, 471 U.S. 386, 392-93 (1985).

"Probable cause exists where the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175 (1979); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (defining probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place"). "Probable cause . . . is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Rather, it is a "practical, nontechnical conception" based on "common sense conclusions about human behavior." *Gates*, 462 U.S. at 231-32, 287 (finding that probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules"). "The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." *United States v. Fama*, 758 F.2d 834, 838 (2d

17

Cir. 1985).   Finally, "when the police possess probable cause to believe that a vehicle contains contraband, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages in the vehicle." *United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004) (internal citations and quotations omitted).

## III.    ANALYSIS

The Court begins its analysis by explaining that, in addition to carefully reviewing the two exhibits received into evidence at the evidentiary hearing on Defendant's motion, the Court has carefully evaluated each of the three hearing witnesses' credibility under the totality of circumstances, including factors such as (1) their demeanor, body language, mannerisms, tone of voice, facial expressions, and eye contact, and (2) the internal consistency and corroborated nature of their statements.   *Cf. Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir. 1996) ("[W]e must accord great deference to the trial court's findings regarding credibility because the trial judge is in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says.").

After carefully considering all of the evidence (including Defendant's affidavit in support of his motion), the Court finds persuasive evidentiary support for each of the factual assertions offered by the Government.   (Dkt. No. 33, at 2-6.)   In addition, the Court finds merit to each of the arguments offered by the Government in its memoranda of law.   *See, supra,* Parts I.B. and I.D. of this Decision and Order.   As a result, the Court denies Defendant's motion for each of the numerous alternative reasons offered by the Government.   *Id.*

To those reasons, the Court adds only three brief points.   First, in addition to relying on

18

the circumstances listed by the Government in its opposition memoranda of law, the Court relies on the fact that Defendant became visibly agitated at seeing Trooper Heath walk toward the vehicle as if to search it as Defendant was performing his field-sobriety test.   *See United States v. Salazar*, 945 F.2d 47, 51 (2d Cir. 1991) (finding a *Terry* frisk authorized where officers had reason to believe defendant was a drug dealer because "narcotics dealers frequently carry weapons," and where defendant "had become visibly nervous at learning that they were law enforcement officers").

Second, the Court is not persuaded by Defendant's argument that the "logic of *Michigan v. Long*" does not apply here.   (Dkt. No. 44, at 8.)   Despite Defendant's argument that "no one had ever seen Mr. Albert with a weapon" before, Syracuse Police Detective Billy Kittell informed Senior Investigator Anthony Halsey that Defendant was armed and dangerous.   (Dkt. No. 42, at 60-61.)   Furthermore, in addition to this statement by Detective Kittell, Senior Investigator Halsey based his statement to Trooper Heath on two additional facts: (1) Defendant had been indicted by a grand jury for killing another person; and (2) Halsey's experience performing three controlled purchases of drugs from Defendant, and his experience that people who sell drugs often carry guns.[3]   (*Id*. at 59-61.)   Moreover, it is of little persuasiveness that Trooper Heath possessed the keys to Defendant's (then-*un*locked) car, and that Defendant was positioned a full car-length away from his car (having stepped in agitation away from Trooper Cruz and into the road, within sprinting distance of Trooper Heath, who was distracted by his search), because, as explained earlier, two reasons for the previously stated rule in *Michigan v.*

---

[3]   *Cf. United States v. Oates*, 560 F.2d 45, 62 (2d Cir. 1977) ("It was Agent Hammonds' personal experience that persons arrested as narcotics violators often were found in possession of weapons at the time of their arrest.   Indeed, even apart from the agent's personal experiences, we have recognized that to substantial dealers in narcotics firearms are as much tools of the trade as are most commonly recognized articles of narcotics paraphernalia.") (internal quotation marks

*Long* are that (1) "a *Terry* suspect in [such a] position [might] *break away* from police control and retrieve a weapon from his automobile," and (2) "if the suspect is not placed under arrest, he will be permitted to *reenter* his automobile, and he will then have access to any weapons inside." *See, supra,* Part II.B.1. of this Decision and Order (emphasis added).   Simply stated, based on the current record, the Court is unable to find that the search had a "purely evidentiary" purpose rather than a "protective" one, for purposes of *United States v. Hussain*, 835 F.3d 307, 313 (2d Cir. 2016).

Third, and finally, the Court is not persuaded by Defendant's argument that N.Y. Penal Law § 222.05(4) (which impacts findings, in criminal proceedings, of reasonable cause to believe a crime has been committed) limits the previously stated rule in *Michigan v. Long*, which regards the Fourth Amendment.   (Dkt. No. 44, at 12-13.)   *See United States v. Bernacet*, 724 F.3d 269, 277-78 (2d Cir. 2013) ("[T]he Fourth Amendment does not incorporate state *procedural* criminal law.") (emphasis in original).

For all of these reasons, Defendant's motion is denied.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to suppress (Dkt. No. 31) is **DENIED**.

Dated: July 29, 2026
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

omitted).